UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

| | |
|---|---|
| MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., | ) ) ) |
| Petitioner, | ) ) ) |
| v. | ) No. 9:12-cv-80355-KAM ) ) |
| TAMARA SMOLCHEK and MERI RAMAZIO, | ) ) ) |
| Respondents. | ) |

## DECLARATION OF DOUGLAS K. SPAULDING

Pursuant to 28 U.S.C. § 1746 and this Court's Order dated May 17, 2012, and in accordance with the May 16, 2012 *ore tenus* ruling of Magistrate Judge Brannon in this matter and with the understanding (confirmed by Magistrate Judge Brannon) that nothing contained herein constitutes a waiver of attorney-client privilege or work-product immunity, I, Douglas K. Spaulding, declare, certify and verify under penalty of perjury that the following is true and correct:

1. My name is Douglas K. Spaulding and I am a partner with Reed Smith LLP. I graduated from the University of Virginia in 1977 and I am a member of the Bars of Virginia and the District of Columbia since 1977 and 1978, respectively. I joined Reed Smith on May 1, 1984.

2. I represented Merrill Lynch, Pierce, Fenner and Smith, Inc. ("Merrill Lynch") in the Financial Industry Regulatory Authority ("FINRA") proceeding captioned

*Tamara Smolchek and Meri Ramazio v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, FINRA Case No. 10-04432.

3. The FINRA arbitration hearing began on January 23, 2012. I do not recall having any knowledge prior to the beginning of the hearing that the law practice of Robert Wayne Pearce—the husband of panel chairperson Bonnie Pearce—was anything other than what Ms. Pearce stated in her disclosures: a "securities lawyer" with an institutional orientation whose clients included Amex Financial Advisors, Biltmore Securities, and Asset Management Securities.

4. Peter Homer, a member at the Homer Bonner law firm, appeared as co-counsel for Merrill Lynch in the arbitration on Thursday, January 26, 2012. This was the beginning of the fourth day of the arbitration hearing. That evening, Mr. Homer informed me and others about the specific nature of Mr. Pearce's law practice—that he regularly represented clients suing brokerage firms—and that Mr. Homer believed Mr. Pearce might have been adverse to Merrill Lynch. Thereafter, research was conducted which showed: that Mr. Pearce's law practice focuses on the representation of clients adverse to financial institutions; that Mr. Pearce had represented clients adverse to Merrill Lynch in the past; and that Mr. Pearce had (in a Palm Beach Post article) expressed personal animosity toward Merrill Lynch. I have no recollection of knowing this information prior to the discussion with Mr. Homer and the research that followed.

5. On January 31, 2012, Merrill Lynch submitted a letter to the FINRA Director of Arbitration asking that Ms. Pearce be removed from the arbitration panel for failing to make required disclosures. I reviewed the letters submitted to FINRA (the

January 31, 2101 letter and a February 2, 2012 reply to Claimants' response letter) and believed that they were accurate.  FINRA denied Merrill Lynch's request.

6. After an award was rendered on April 3, 2012, Merrill Lynch petitioned to vacate the award in this Court.  I reviewed the Petition before it was filed and believed that all facts stated therein were entirely accurate at the time of that review.

7. On or about May 17, 2012, I discovered some documents in my files including:  5 pages from the website for Robert Wayne Pearce, PA, printed on January 15, 2012 (8 days before the start of the arbitration hearing); 3 pages from the website, printed on January 21, 2012 (2 days before the start of the hearing); and a copy of the arbitration award in Friedman v. Merrill Lynch, Pierce, Fenner & Smith, NASD Dispute Resolution No. 03-06176 with no print-date. (filed at Doc. No. 30-1).  However, I have no recollection of accessing Mr. Pearce's website, printing these documents, or reviewing these documents.  After discovering these papers, Merrill Lynch filed a Notice to Supplement and Clarify the Petition, and submitted a letter to FINRA informing it of the newly-discovered papers.

8. The documents in my file did not include the Palm Beach Post article, and none of the documents referenced in paragraph 7 above revealed Mr. Pearce's personal animosity to Merrill Lynch.

9. As set forth in Merrill Lynch's January 31, 2012 letter to FINRA and in its Petition to Vacate, once the hearing began, Merrill Lynch concluded that Ms. Pearce exhibited bias to Merrill Lynch, as set forth in those filings.  Ms. Pearce's actions during the first five days of the hearing (prior to filing the January 31 letter to FINRA requesting

her removal) were obviously unknown to and unknowable to me prior to the commencement of the arbitration hearings. Once Ms. Pearce's bias became apparent, when coupled with the full extent of her nondisclosure and her husband's expressed animosity toward Merrill Lynch, Merrill Lynch promptly filed its January 31 letter to remove her.

Pursuant to 28 U.S.C. § 1746, I declare, and state under penalty of perjury, that the foregoing is true and correct. Executed on May 31, 2012.

*/s/ Douglas K. Spaulding*
Douglas K. Spaulding